IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA D. TOWNSEND, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. CIV-06-1229-M ) |
| MICHAEL J. ASTRUE,[1] Commissioner, Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Cynthia D. Townsend ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing applications seeking disability insurance benefits and supplemental security income payments in April, 2004 [Tr. 51 - 53 and 601 - 603]. She alleged that Graves' disease, anxiety, depression, a heart murmur, and problems with her thyroid and gall bladder became disabling as of December 29,

---

[1] Effective February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant in this action.

2003 [Tr. 72 - 73]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 27 - 30, 32 - 34, 605 - 608, and 610 - 611]; an Administrative Law Judge ("ALJ") then conducted a March, 2006, hearing where Plaintiff, who was represented by counsel, Plaintiff's mother, and a vocational expert testified [Tr. 615 - 657]. In his May, 2006 decision, the ALJ found that Plaintiff retained the capacity to perform her past relevant work and, consequently, was not disabled within the meaning of the Social Security Act [Tr. 17 - 23]. The Appeals Council of the Social Security Administration declined Plaintiff's review request [Tr. 7 - 10], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff maintains, first, that the ALJ erred in failing to discuss and evaluate several opinions rendered by Plaintiff's treating physicians and, second, that the ALJ's residual functional capacity[2] assessment was legally insufficient and unsupported by substantial evidence.

The recommendation for remand in this case rests on the ALJ's failure to properly consider medical opinions of record, specifically those of Plaintiff's treating

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 405.1545 (a) (1), 416.945 (a) (1).

endocrinologist,[3] John W. Drake, M.D.[4]  The evidentiary issues surrounding other claimed error will necessarily be impacted by further proceedings on remand[5] and, accordingly, will not be addressed here.  *See Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003).

**Analysis**

Plaintiff's primary claim at her administrative hearing was that difficulties with her thyroid – eventually resulting in its surgical removal in September, 2005 [Tr. 21] – left her with neurological damage and limitations which included total body weakness [Tr. 619, 620, 623 - 625, 630 - 633, and 635 - 636].  The ALJ, however, concluded that "neurological impairment has not been established." [Tr. 22].

As is apparent from the voluminous record in this case, since early 2004 Plaintiff has had a significant amount of medical treatment and a significant number of both long and short-term encounters with physicians and other medical personnel in connection with her thyroid and other physical and mental difficulties [Tr. 151 - 600].  During her course of treatment, various treating physicians provided opinions regarding Plaintiff's impairments; generally, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004).

---

[3]An endocrinologist is "[a] clinician or researcher who specializes in endocrinology" which is defined as "[t]he science and medical specialty concerned with the internal or hormonal secretions and their physiologic and pathologic relations." *Stedman's Medical Dictionary* 639 (28th ed. 2006).

[4]Consequently, Plaintiff's residual functional capacity is not supported by substantial evidence as it does not include functional limitations suggested by Dr. Drake's opinions.

[5]Because Plaintiff, whose date last insured is March 31, 2009 [Tr. 17], claims continued and ongoing disability, updated medical records will presumably be added to the record on remand.

In determining that Plaintiff was not disabled because she had the capacity to perform her past relevant work, the ALJ stated that he "considered the multiple assessments . . . by John W. Drake, M.D., that the claimant was totally disabled." [Tr. 22].[6] While acknowledging that the opinion of a treating physician is entitled to great weight, the ALJ noted that this deference applies in connection with a treating physician's *medical* opinion on the nature and severity of a claimant's impairments but that a statement that a claimant is "disabled" is not a medical opinion but an issue reserved for the Commissioner's determination. *Id.* The ALJ stated that such opinions are never entitled to controlling weight "but must be carefully considered to determine the extent to which they are supported by the record as a whole and contradicted by persuasive evidence." *Id.*

The first of the opinions discounted by the ALJ was offered by Dr. Drake, Board Certified in Endocrinology, after seeing Plaintiff on September 3, 2004, on referral from her primary physician in connection with hyperthyroidism and problems with walking [Tr. 418 - 419 and 450 - 451]. Dr. Drake found that although Plaintiff was beginning to respond to medication, in the Spring of 2004 "she clearly had severe thyrotoxicosis."[7] [Tr. 418 and 450]. He further noted that, "I believe that during this period she developed

---

[6]The ALJ referenced Dr. Drake's opinions found in Exhibit 20F, pages 28 and 29 and in Exhibit 28, pages 2, 7 and 28 [Tr. 22]. These record designations correspond to pages 418, 419, 450, 455, and 476 of the transcript. Because page 476 of the transcript is a laboratory report, the undersigned assumes that the ALJ's reference was intended to be to Exhibit 28, page 38, page 486 of the transcript.

[7]Thyrotoxicosis is defined as "[t]he state produced by excessive quantities of . . . thyroid hormone." *Stedman's Medical Dictionary* 1988 (28th ed. 2006).

5

some myelopathy[8] and neuropathy,[9] which is still troubling her . . . [and that] [s]he is clearly disabled at this time by the persisting hyperthyroidism and by the myelopathy just mentioned." *Id.*

The second of Dr. Drake's opinions referenced by the ALJ was a follow-up letter written to the referring physician several months later reporting both a set-back in treatment and that Plaintiff "continues to be disabled by all the symptoms that go with thyrotoxicosis." [Tr. 455].

Dr. Drake's most recent opinion and the third specifically noted by the ALJ was rendered on January 19, 2006:

> I saw [Plaintiff] on January 13, 2006.  She has recently been hospitalized for thrombocytopenic purpura and is now on prednisone therapy.  This has controlled the disease, at least temporarily.  She is, however, facing the possibility of more therapy and possibly splenectomy.
>
> She has recovered from a thyroidectomy for Graves disease and is now euthyroid on levothyroxine replacement therapy.  She continues to suffer from the neurological sequelae of Graves disease and thyroid storm, which she experienced earlier.  The disease apparently affected her cerebellar function and her spinal cord function, and she has abnormal coordination, weakness, occasional dizziness, and difficulty concentrating.
>
> For all these reasons, I consider her to be disabled and unable to seek gainful employment.

[Tr. 486].

The ALJ's final reference to Dr. Drake and his opinions was to discuss only one portion of the following letter written by Dr. Drake in April, 2005:

---

[8]Myelopathy is defined as a "[d]isorder of the spinal cord." *Stedman's Medical Dictionary* 1270 (28th ed. 2006).

[9]Neuropathy is "[a] classic term for any disorder affecting any segment of the nervous system." *Stedman's Medical Dictionary* 1313 (28th ed. 2006).

> [Plaintiff] developed Graves disease with thyroid storm in March of 2004. Subsequent to that, she received treatment with radioactive iodine. During this period she also had cholecystitis and developed cholestatic hepatitis. He gallbladder was later removed. During this episode, she was very weak and at times unable to walk.
>
> I first saw her in September of 2004, and at that time she was still toxic, despite treatment with radioactive iodine. I treated her with propylthiouracil, and to this date the patient remains on propylthiouracil, although the dose has varied greatly during this period of time.
>
> The patient, at this time, still has a large, firm thyroid, and without the propylthiouracil it would again become toxic, characteristic of Graves disease. The patient continues to complain of fatigue, weakness, hives, insomnia, and lightheadedness. She has a gross tremor of her right arm and hand.
>
> It is my impression that the patient has as a primary problem Graves disease. Graves disease is an autoimmune disorder, and with it there can be encephalopathy, myelopathy, and neuropathy on an autoimmune basis. I believe [Plaintiff] has suffered some of all of these problems, and that has resulted in her symptoms of anxiety and weakness, I cannot predict how long these symptoms will last since they are not treatable with propylthiouracil. The propylthiouracil controls only the hyperthyroidism that is associated with Graves disease.
>
> I will have to yield to neurology specialists and psychiatry specialists to assess the degree of disability and the permanence of her disability from these neuropsychiatric symptoms.

[Tr. 402]. The ALJ's decision references only Dr. Drake's statement in his concluding paragraph that he would yield to neurology specialists to assess the degree of Plaintiff's disability and then states that "[f]ollowing examination on December 13, 2005, S. V. Vaidya, M.D., a neurology specialist, indicated that he could not assess neurological deficit in face of symptom magnification." [Tr. 22]. Thus, the ALJ apparently concluded that none of Dr. Drake's opinions were entitled to controlling weight because "[o]pinions on issues reserved to the Commissioner, such as that of Dr. Drake's, can never be entitled

to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole and contradicted by persuasive evidence." *Id.* And, because "Dr. Drake indicated that her [sic] would yield to neurology specialists and psychiatry specialists to assess the degree of disability[,]" and because a one-time examining neurologist stated that he could not assess whether Plaintiff had a neurological deficit due to symptom magnification [Tr. 22 and 378], the ALJ apparently rejected all of Dr. Drake's medical opinions, including his opinions about the nature and severity of Plaintiff's symptoms and limitations resulting from her thyroid disease.

As explained by the Tenth Circuit in *Castellano v. Secretary of Health and Human Services,* 26 F.3d 1027 (10th Cir. 1994), a treating physician may provide various types of opinions to which the ALJ will accord varying weight:

> A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.  *See* [20 C.F.R.] §§ 404.1527(a)(2), 416.927(a)(2).  The [Commissioner] will give controlling weight to that type of opinion if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  *See id.* §§ 404.1527(d)(2), 416.927(d)(2).  A treating physician may also proffer an opinion that a claimant is totally disabled.  That opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner].  *Id.* §§ 404.1527(e)(2), 416.927(e)(2).

*Id.* at 1029.

Even, however, "in evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527 (d) and 416.927 (d)." Social Security Ruling 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner,

8

1996 WL 374183, at *3.  These factors include

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Masanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  Here, the decision by the ALJ does not explicitly reflect his consideration of this factors, and this court "must remand because [it] cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion." *Watkins,* 350 F.3d at 1301.

Moreover, even where "[t]he ALJ was not bound by claimant's doctors' opinions on the ultimate issue of disability . . . [t]he ALJ was required . . . to give a specific, legitimate reason for rejecting their opinions." *Roberts v. Barnhart,* 36 Fed. Appx. 416, 418 (10th Cir. June 12, 2002) (unpublished op.).  In this case, Dr. Drake, who treated Plaintiff through a medical course characterized by the ALJ as "mobile" [Tr. 620],[10]

---

[10]The following exchange occurred between the ALJ and Plaintiff's counsel at the administrative hearing:

ALJ: Yeah, that's another thing, I've been trying to put together.  She's claiming disability since December 29, 2003.  And she's had - - it appears that her - - the issues have been kind of mobile as we go along.  At first she had apparently an overactive thyroid, thyrotoxicosis, February '04.  Then the thyroid was removed.  Then her doctor says she's disabled because she doesn't have - - her thyroid is under-active.  So, first she's disabled because it's overactive.  Then she's disabled because it's under - - or it's gone.  So, I was just trying to deal with that.  If you could maybe work with that?

ATTY: I think it's not disabled because she's gone, but because of what happened to her before it was removed.  She underwent two different radioactive treatments to try to lessen the power of the thyroid, but they were unsuccessful.  They finally had to remove it.  In the
(continued...)

opined less than two months before the administrative hearing that Plaintiff continued to suffer from the "neurological sequelae" of thyroid disorders which had "affected her cerebellar function and her spinal cord function," leaving her with "abnormal coordination, weakness, occasional dizziness, and difficulty concentrating." [Tr. 486]. Dr. Drake also concluded that Plaintiff's impairment was of such severity that it rendered her disabled and unemployable. *Id.* The sole reason provided by the ALJ for rejecting these opinions was that Dr. Drake had previously stated that, "I will have to yield to neurology specialists and psychiatry specialists to assess the degree of disability and the permanence of her disability from these neuropsychiatric symptoms[,]" [Tr. 402] and that a neurologist had then been unable to assess a neurological deficit because of symptom magnification [Tr. 22].

While the ALJ's explanation was specific, it was not legitimate. In the first place, although Dr. Drake stated that he could not opine as to the permanence of Plaintiff's disability, he *never* yielded to any other specialist the validity of his opinion that Plaintiff suffered from neurological symptoms and impairments – abnormal coordination, weakness and concentration difficulties – as a result of her endocrine disorders. Secondly, the neurologist, even when squarely asked by the State agency on behalf of the Social Security Administration if "you believe there is any neurological deficit[,]" did not provide an opinion on whether or not Plaintiff had such a deficit but stated, instead, that

---

[10](...continued)
meantime, she had these thyroid storms, which is as I understand, was severely toxic to the body and caused all these problems that persevere in terms of neurological damage. And now that it's completely gone, I don't think it's causing trouble. She can take synthetic thyroid, but the damage is done.
[Tr. 620].

10

symptom magnification prevented him from making this assessment [Tr.378].

The ALJ did not properly assess the opinions of Plaintiff's treating endocrinologist, and remand for additional proceedings is necessary.

### **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by the 23rd day of October, 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 3rd day of October, 2007.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE